COLUMBUS BAR ASSOCIATION v. GINTHER.

[Cite as *Columbus Bar Assn. v. Ginther,*
**108 Ohio St.3d 48, 2006-Ohio-79.**]

(No. 2005–1192—Submitted August 23, 2005—Decided January 25, 2006.)

_____

**Per Curiam.**

{¶ 1} Respondent, Jeffrey D. Ginther of Columbus, Ohio, Attorney Registration No. 0022665, was admitted to the practice of law in Ohio in 1973. On March 19, 2003, we found that respondent had neglected one client's case and failed to formally withdraw as the client's counsel after being discharged. We suspended respondent's license to practice law for six months, but we stayed the suspension on conditions, including that he comply with a treatment program for his alcohol abuse and depression. See *Columbus Bar Assn. v. Ginther,* 98 Ohio St.3d 345, 2003-Ohio-1010, 785 N.E.2d 432.

{¶ 2} On October 11, 2004, relator, Columbus Bar Association, charged respondent with additional acts of professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on comprehensive stipulations and other evidence, made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} Relator's complaint contains seven counts, each relating to a different client grievance. The grievances alleged that respondent had committed misconduct in 2002 and 2003 in his handling of four bankruptcy cases, two domestic-relations cases, and one adoption case. Respondent stipulated to misconduct in each case.

### Count I

{¶ 4} Respondent agreed in January 2003 to represent a client in a bankruptcy case that required him to work swiftly to achieve the relief she desired. The client paid respondent $175 to quickly convert her Chapter 13 bankruptcy into a Chapter 7 because she could not make the payments under the Chapter 13 plan. Respondent did not return his client's calls over the next month and then promised to send the necessary paperwork for her signature. The client never received the documents, and on March 13, 2003, the bankruptcy trustee moved to dismiss her Chapter 13 bankruptcy due to her failure to make payments.

{¶ 5} On March 18, 2003, the client discharged respondent and demanded a refund. Respondent returned the client's money eight days later. After the client complained to relator, respondent blamed his failure to perform on the fact that he was working full-time for the Franklin County Clerk of Courts and was practicing law only part-time.

{¶ 6} Respondent stipulated and the board found that he had violated DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him), 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment), and 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship).

### Count II

{¶ 7} In November 2002, a client paid respondent $450 to file a Chapter 7 bankruptcy petition on her behalf. Respondent prepared the paperwork and had his client sign the documents without reading them first. The documents contained material errors that the client did not find until respondent sent her a copy of what he had filed. The client immediately tried to contact respondent

about the errors, but he did not return her calls. The client called respondent for advice when one of her creditors later filed an adversary proceeding, but he never returned her call.

{¶ 8} Respondent refunded the client's fees after she complained to relator. In response to her grievance, respondent again blamed his inaction on the fact that he had taken a full-time job in the clerk of court's office in December 2002.

{¶ 9} Respondent stipulated and the board found that he had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

## Count III

{¶ 10} A couple retained respondent in March 2003 to file a bankruptcy petition on their behalf, paying him $525. From March until late September 2003, the couple's creditors continued to demand payment, and the couple called respondent for help and also told their creditors to contact respondent. Respondent did not return his clients' calls or those of their creditors.

{¶ 11} Respondent finally contacted the couple on September 24, 2003. He told them that he would mail them documents to sign, and he also mentioned that he would soon be moving his office. Respondent did not send the promised paperwork or provide them with his new address.

{¶ 12} In October 2003, the couple complained to relator that respondent had done nothing in their bankruptcy case. Respondent contacted his clients in November 2003 to say that he could not represent them because he had registered for inactive-attorney status and could not practice law. Respondent later returned the couple's retainer and paid $950 toward the cost of employing another lawyer.

{¶ 13} Respondent stipulated and the board found that he had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

## Count IV

{¶ 14} In February 2003, a client paid respondent $475 to file a Chapter 7 bankruptcy petition on her behalf. Respondent filed the petition in April 2003, and his client's debts were later discharged. Later that year, however, the bankruptcy court advised the client that respondent had not provided addresses for two major creditors and that the court could not send them notice of the client's discharge.

{¶ 15} In August 2003, the client received a foreclosure notice concerning her home. Respondent had failed to give her advance warning that the foreclosure notice was coming, as he had promised her he would. The client was unable to reach respondent, who by that time had moved his office. In October 2003, the

client complained to relator that she could not find respondent. Respondent did not respond to this grievance.

{¶ 16} Respondent stipulated and the board found that he had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation).

## Count V

{¶ 17} In February 2002, a client paid respondent $600 in fees and costs to represent him in the dissolution of his marriage. The client was subsequently unable to reach respondent until May of that year, but respondent eventually completed the dissolution pleadings, had the client obtain the necessary signatures, and filed the case. The dissolution was filed and set for hearing in September 2002. Respondent did not appear at the hearing.

{¶ 18} Respondent told his client that he had forgotten the scheduled court date and promised to refile the papers necessary to obtain a new hearing. Respondent also told his client that he would cover the $250 refiling fees himself, but he never refiled the case.

{¶ 19} In March 2003, respondent advised the client to obtain new counsel and promised to refund his fees. Respondent did not send the money, however, and his client had to sue him for the fees in small claims court. The court scheduled a mediation session, at which respondent failed to appear.

{¶ 20} In November 2003, the client complained to relator. In December 2003, respondent sent a letter of apology and refunded $500. Respondent returned the remainder of the fee in April 2005.

{¶ 21} Respondent stipulated and the board found that respondent had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

## Count VI

{¶ 22} In September 2002, respondent represented a woman in a child-custody and support case. That month, the parties agreed to a modification of their shared-parenting plan. In January 2003, respondent told the magistrate at a pretrial conference that he intended to withdraw as counsel. Respondent never filed a motion to withdraw, and no one appeared on his client's behalf at a March 2003 hearing on child support and the husband's request for attorney fees. The magistrate ordered respondent, personally, to pay $500 in fees to the husband's lawyer. Respondent paid the $500 in April 2003 and finally moved to withdraw as counsel in December 2003.

{¶ 23} Respondent stipulated and the board found that respondent had violated DR 1–102(A)(6), 2–110(A)(2) (a lawyer shall not withdraw from employment

without taking reasonable steps to avoid prejudice to his client), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

### Count VII

{¶ 24} In June 2001, a couple paid respondent a $1,500 retainer to help them with the adoption of three children, all siblings. In July 2003, Franklin County Children Services notified the couple that their attorney needed to arrange for final approval of the adoptions. Despite his promise that he would be available to them throughout the whole adoption process, respondent did not return his clients' calls, and they finally had to hire another lawyer.

{¶ 25} Respondent's clients had no idea that respondent was working as an attorney only part-time. The couple's new lawyer completed the adoption.

{¶ 26} The couple left messages for respondent asking him to return the unearned portion of the retainer, which they estimated to be $750. Respondent again did not return their calls until they threatened to file a grievance. Respondent then promised to review his bookkeeping records and return the unused portion of their retainer. When the couple did not receive a refund within nine weeks of that conversation, they complained to relator. The following month, December 2003, respondent sent the couple a letter of apology, advised them that he had taken another job, and disclosed that he had been "in treatment for severe depression." Respondent also refunded the remaining $750 of the clients' money.

{¶ 27} Respondent stipulated and the board found that respondent had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

### Sanction

{¶ 28} In recommending a sanction for respondent's misconduct, the board considered respondent's background and weighed the specified mitigating and aggravating factors in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 29} In 1969, respondent served in the United States Army in Vietnam. He received a Purple Heart and the Bronze Star. After his discharge, respondent attended the University of Denver Law School. Upon graduation in 1973, he returned to Ohio and worked with the Ohio Department of Commerce, Division of Securities. He later practiced privately in Columbus until 1986.

{¶ 30} Between 1986 and 1990, respondent left the practice of law to be a full-time therapeutic foster parent. He and his wife are certified therapeutic foster parents and have fostered 46 children during the past 18 years. Respondent resumed his legal practice in 1990, predominantly in juvenile law. He remained

in full-time private practice, most recently doing bankruptcy work, until December 2002, when he went to work for the Franklin County Clerk of Courts. In November 2003, respondent registered as an inactive attorney pursuant to Gov.Bar R. VI(2).

{¶ 31} As aggravating features, the parties stipulated and the board found that respondent had a prior disciplinary record, that he had committed a pattern of misconduct and multiple offenses, that he had initially failed to cooperate in the disciplinary process, and that he had harmed emotionally and financially vulnerable clients. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), and (h).

{¶ 32} In mitigation, the parties stipulated and the board found that respondent had not acted dishonestly or in his own interest, that he had made efforts to rectify the consequences of his misconduct, and that witnesses had attested to his good character. BCGD Proc.Reg. 10(B)(2)(b), (c), and (e). Two attorneys, one a former employer of respondent's and another who has known respondent through Alcoholics Anonymous ("AA") for four years, testified as to respondent's integrity and community service. In addition, other attorneys familiar with respondent wrote letters on his behalf.

{¶ 33} Respondent also submitted evidence of his treatment for alcohol dependency and depression. For these conditions to be given value in mitigation, BCGD Proc.Reg. 10(B)(2)(g) requires (i) a professional diagnosis of alcohol dependence or mental disability, (ii) a determination that the chemical dependency or mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional or alcohol-abuse counselor that the attorney will be able to return to competent, ethical professional practice under specified conditions.

{¶ 34} Respondent testified that in late 1997, he sought treatment for depression, first from a private physician and then through Veterans Affairs ("VA") Clinics. Under the supervision of a VA psychiatrist, respondent was placed on medications that he still takes. At the same time, respondent also sought help for his alcohol addiction, attending AA meetings, becoming involved with the Ohio Lawyers Assistance Program ("OLAP"), and completing a hospital-affiliated alcoholism-recovery program. He cited January 22, 2001, as his sobriety date and testified that he has maintained compliance with an OLAP contract for his recovery to date. Respondent testified that in December 2003, he sought counseling for depression from Dr. Kevin Arnold, a behavioral psychologist, whom he continues to see regularly. Respondent credits Arnold with helping him understand and accept his limitations.

{¶ 35} Respondent further testified about events that occurred after December 2002, when he began working for the clerk of courts. He said that he had taken the position because his wife has health problems and the job offered good

medical-insurance benefits. He nevertheless attempted to maintain a part-time law practice in bankruptcy law because he thought he might be able to accommodate both that practice and his full-time work. It became apparent early on that he could not do both jobs, however, and respondent conceded that he did not immediately refer his clients to other counsel and promptly refund their fees. Instead, he continued to accept new clients through May or June 2003.

{¶ 36} Asked if he accepted responsibility for his stipulated misconduct, respondent frankly replied: "Yes, I do. I wasn't depressed. I wasn't drunk at the time. I was trying to do too much, and, you know, should have realized much sooner that it was impossible." As to whether his depression had caused his misconduct, respondent testified: "I had the bad judgment which I suppose relates to the depression to start a full-time job shortly before I tried to represent these other people at the same time." Respondent added that he intends to keep working for the government and that if he is permitted to return to the practice of law, it could be only in a structured environment that did not involve litigation.

{¶ 37} In his report to the panel and board, Arnold recounted that he had been treating respondent since December 2003. He had diagnosed respondent with dysthymia, "a chronic depression that does not lift for any significant period of time over at least a two year period," and "Alcohol Abuse in complete remission." Arnold did not, however, report that respondent's mental condition contributed to the misconduct in this case. As to respondent's ability to practice law competently, Arnold wrote that respondent needs a low-stress, highly structured work environment with well-defined duties. Stressors such as procedural deadlines and contentious clients and counsel would create a risk of respondent's relapse and return to self-medication. Dr. Arnold was hopeful, however, that with sufficient oversight and restrictions, respondent could return to the practice of law.

{¶ 38} Scott Mote, OLAP's executive director, testified that respondent became involved with OLAP in 2001 but had "disengaged" from the program in 2002. Respondent returned to the program in 2003 and has since been in compliance with the OLAP contract in aid of his recovery. Mote testified that he believes that respondent suffers from alcoholism and depression. When asked whether respondent would be able to competently and ethically practice law, Mote said that he had noticed a dramatic change in respondent's accountability since late 2003, but he was still unsure, saying: "Does that translate into can he practice law? You know, with the stresses of practicing law, I would hope that he's got the tools and got the support system in place through OLAP, Dr. Arnold, other people in the AA recovery community that if he runs into difficulty, he knows how to ask for help instead of just ignoring it, which I think has been the self-destructive behavior kind of thing that he's engaged in until there is a crisis."

{¶ 39} The parties jointly recommended that respondent be suspended from the practice of law for two years, with the second year stayed to allow respondent to serve a one-year probation. As conditions of the stay and probation, the parties proposed that respondent be ordered (1) to make restitution, (2) to continue to comply with his OLAP contract, and (3) to continue with medical and psychological treatment in accordance with his doctors' and OLAP's recommendations. The parties also suggested the appointment of a monitoring attorney chosen by relator to oversee any legal work respondent performs during the probation.

{¶ 40} The board, relying on the panel's report, had reservations about this proposal. First, the board did not find respondent's alcoholism and depression mitigating under BCGD Proc.Reg. 10(B)(2)(g), because no evidence established a causal connection between his medical condition and misconduct. Second, the board found that the working conditions that Arnold and Mote believe are necessary for respondent to competently practice law are, for now, so restrictive that the board felt an indefinite suspension was appropriate, with reinstatement possible only upon a mental-health evaluation establishing that he is capable of returning to the competent and ethical practice of law.

{¶ 41} Moreover, the board expressed concern about the timing of these grievances in relation to the prior disciplinary action, noting that the misconduct in these seven grievances occurred after the first disciplinary complaint had been filed, and much of it occurred while respondent was serving the stayed six-month license suspension imposed in March 2003. The board found respondent's explanation for his misconduct—poor judgment—an understatement inasmuch as he continued to neglect seven more clients' cases after having been disciplined for the neglect of one. Moreover, respondent's demeanor and testimony at the hearing indicated only perfunctory recognition of the distress and harm he had caused his clients and did not convince the panel that respondent truly appreciated the gravity of his wrongdoing.

{¶ 42} The panel and board recommended that respondent receive an indefinite suspension from the practice of law and further recommended that along with any petition for his reinstatement to the Ohio bar, he be required to submit evidence in the form of a mental-health evaluation establishing that he is capable of returning to the competent and ethical practice of law. Respondent does not object to the board's recommendation.

## Review

{¶ 43} We agree that respondent violated DR 1–102(A)(6), 2–110(A)(2), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3) and Gov.Bar R. V(4)(G), as found by the board. We further agree that an indefinite suspension is appropriate based on the board's reservations and reasoning.

56

{¶ 44} Respondent is therefore indefinitely suspended from the practice of law in Ohio. Upon any petition that respondent files for his reinstatement to the Ohio bar, he is required in addition to the requirements of Gov.Bar R. V(10) to submit evidence, in the form of a mental-health evaluation, showing that he is capable of returning to the competent and ethical practice of law. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

Bruce A. Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel; and Carpenter & Lipps and Jeffrey A. Lipps, for relator.

Kettlewell & Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.