COLUMBUS BAR ASSOCIATION *v.* HARRIS.

[Cite as *Columbus Bar Assn. v. Harris,*
108 Ohio St.3d 543, 2006-Ohio-1715.]

(No. 2005–2029—Submitted January 11, 2006—Decided April 19, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Cynthia June Harris of Columbus, Ohio, Attorney Registration No. 0059755, was admitted to the Ohio bar in 1992. She is not currently registered to practice law in Ohio.

{¶ 2} On December 6, 2004, relator, Columbus Bar Association, filed a complaint charging respondent with several counts of professional misconduct. When service of the complaint on respondent by certified mail could not be completed, the complaint was served on the Clerk of the Supreme Court as respondent's agent pursuant to Gov.Bar R. V(11)(B). Respondent did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

## Misconduct

### Count I

{¶ 3} Maggie L. Clark paid respondent a $1,000 retainer in 1999 to represent her in a domestic-relations proceeding. Clark was to receive one-half of her husband's pension and 401(k) assets when their marriage was dissolved in September of that year. Respondent prepared the necessary paperwork to secure Clark's interest in the pension, but failed to do the same for the 401(k) assets. When Clark inquired about the status of the 401(k) paperwork, respondent misrepresented the reasons for the delay in completing that paperwork. Respondent's failure to protect Clark's one-half interest in the 401(k) assets hampered Clark's ability to purchase a new home and to pay medical and dental bills.

{¶ 4} The board found that respondent had thereby violated the following Disciplinary Rules: DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter), 7–101(A)(1) (barring an attorney from intentionally failing to seek the lawful objectives of a client), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment), and 7–101(A)(3) (barring conduct that prejudices or damages a client).

## Count II

{¶ 5} In February 2003, Gerald Parham paid respondent a $2,000 retainer to represent him in separate child-support and child-custody matters. During the representation, respondent failed to return telephone calls from Parham and offered various excuses for her failure to file pleadings in court on Parham's behalf. In August 2003, Parham left a message for respondent, terminating the representation and requesting a refund and the return of his case file. Respondent did not reply, but three months later, she did send him a partial refund of $860, along with a bill detailing several telephone calls to Parham that never occurred.

{¶ 6} The board found that respondent had thereby violated DR 1–102(A)(4), 1–102(A)(6), 2–106(A) (prohibiting an illegal or clearly excessive fee), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

## Count III

{¶ 7} In June 2003, Gary Kuhlen paid respondent a $1,500 retainer to represent him in an anticipated divorce case. After Kuhlen's wife filed for divorce in July 2003, Kuhlen tried to call respondent, but her office telephone had been disconnected. Kuhlen then left several messages for respondent on her cellular telephone's voice mail. Respondent did return the calls, although not until several days later. Kuhlen asked respondent to seek a restraining order immediately to prevent his wife from contacting him. Respondent later told Kuhlen that she had filed a request for the restraining order as he had requested, but in fact, she had not done so. With no restraining order in place, Kuhlen's wife continued to contact him at home and at work.

{¶ 8} During the representation, respondent failed to keep Kuhlen apprised of the status of his case. Kuhlen learned about an upcoming court hearing from his wife rather than through respondent. In October 2003, Kuhlen left a message for respondent terminating the representation and demanding a refund and his case file. Respondent delivered Kuhlen's case file to his new attorney, but did not refund his retainer or provide an accounting of her services.

{¶ 9} The board found that respondent had thereby violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–106(A), 6–101(A)(3), 7–101(A)(1), and 7–101(A)(2).

## Count IV

{¶ 10} Between November 2002 and February 2003, Kimberly Kohler paid respondent a $1,500 retainer to represent her in a dissolution and child-custody matter. Opposing counsel drafted a shared-parenting plan for respondent's review, and respondent advised Kohler to sign the plan documents. When Kohler read the documents at the other lawyer's office, however, she saw several

provisions that she had not agreed to. She tried to call respondent for advice, but respondent's office telephone had been disconnected, and Kohler left the attorney's office without signing the shared-parenting plan.

{¶ 11} Later, respondent called Kohler and told her that she was leaving the practice of law but would contact opposing counsel to discuss Kohler's concerns about the shared-parenting plan. Respondent never spoke with opposing counsel, however, and did not return Kohler's phone calls about the issue. Opposing counsel presented the shared-parenting plan to the trial court without Kohler's signature, and it was adopted by the court upon the attorney's representation that respondent had failed to contact him about the document. As a result, Kohler was forced to retain new counsel and incur additional legal expenses in an effort to amend the shared-parenting plan.

{¶ 12} The board found that respondent had thereby violated DR 1–102(A)(6), 2–106(A), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

## Count V

{¶ 13} In November 2001, Catherine Saporito paid respondent a $1,500 retainer to help Saporito collect more than $35,000 in past-due child-support payments. Saporito gave respondent all of the necessary documentation concerning her ex-husband's child-support obligation, including his name and current address. When Saporito inquired about the case over the next three years, respondent said that she had been unable to find the ex-husband.

{¶ 14} In March 2004, Saporito learned that her ex-husband would be in Columbus for the Easter holiday. She tried to contact respondent several times to alert her so that respondent could try to serve the necessary papers on him, but respondent did not return her telephone calls. Saporito later learned that her ex-husband was relocating to Florida and again tried to tell respondent about his new address there. Respondent did not return the calls and never returned Saporito's retainer or case file despite her requests.

{¶ 15} The board found that respondent had thereby violated DR 1–102(A)(6), 2–106(A), 6–101(A)(3), 7–101(A)(1), and 7–101(A)(2).

## Count VI

{¶ 16} Respondent allowed her malpractice insurance to lapse in 2003 and failed to advise her clients of that fact in writing or to secure their signed acknowledgements concerning her uninsured status.

{¶ 17} The board found that respondent had thereby violated DR 1–104(A) (requiring an attorney who does not maintain adequate professional-liability insurance to so advise his or her clients in writing) and 1–104(B) (requiring the

lawyer to keep a copy of the written notice signed by each client for five years after termination of the representation).

{¶ 18} The board also found that respondent promised during an August 2004 deposition to provide additional information to relator about her client trust account, yet never provided that information despite repeatedly assuring relator that she would do so. This conduct, according to the board, violated Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

### Sanction

{¶ 19} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent was sanctioned by this court on January 27, 2003, for failing to comply with continuing-education requirements. See *In re Report of Comm. on Continuing Legal Edn.*, 98 Ohio St.3d 1426, 2003-Ohio-318, 782 N.E.2d 583. We suspended her license to practice law on April 8, 2005, when she failed to pay a fine in connection with that sanction. See *In re Report of Comm. on Continuing Legal Edn.*, 105 Ohio St.3d 1487, 2005-Ohio-1647, 825 N.E.2d 613. In addition, the board found that respondent's actions as described in relator's complaint showed that respondent had engaged in a pattern of misconduct, had committed multiple offenses, had failed to cooperate in the disciplinary process, had refused to acknowledge the wrongful nature of her conduct, had harmed vulnerable clients, and had failed to make restitution. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), (g), (h), and (i).

{¶ 20} The board cited respondent's depression as a mitigating factor, though it noted that she had failed to comply with a mental-health contract with the Ohio Lawyers Assistance Program that she had signed in April 2004. BCGD Proc. Reg. 10(B)(2)(g).

{¶ 21} Relator recommended that respondent's license to practice law be indefinitely suspended. The master commissioner and the board accepted this recommendation.

{¶ 22} We agree that respondent committed the misconduct described above, and we agree that an indefinite suspension is the appropriate sanction. As we have routinely explained, neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension from the practice of law. *Disciplinary Counsel v. Treneff,* 104 Ohio St.3d 336, 2004-Ohio-6562, 819 N.E.2d 695, ¶ 16. The act of accepting retainers or legal fees and failing to carry out contracts of employment is tantamount to theft of the fee from

the client. *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. Respondent's misconduct reflects poorly on the legal profession and caused harm to the clients whose legal matters she neglected.

{¶ 23} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. We also order respondent to return any unearned fees to Maggie Clark, Gerald Parham, Gary Kuhlen, Kimberly Kohler, and Catherine Saporito within 30 days. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Susan C. Walker; Sowald, Sowald & Clouse and Heather G. Sowald; and Bruce A. Campbell, for relator.