COLUMBUS BAR ASSOCIATION *v.* DOWNEY.

[Cite as *Columbus Bar Assn. v. Downey,*
111 Ohio St.3d 158, 2006-Ohio-5346.]

(No. 2006–1188—Submitted August 8, 2006—Decided November 1, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Jacqueline Souel Downey of Columbus, Ohio, Attorney Registration No. 0022818, was admitted to the Ohio bar in 1985. On March 4, 1992, we suspended respondent's license to practice law for 18 months, with six months stayed, for violations of the following Disciplinary Rules: DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client), 9–102(A) (requiring a lawyer to maintain client funds in a separate, identifiable bank account), 9–102(B)(3) (requiring lawyers to maintain complete records and appropriate accounts), and 9–102(B)(4) (requiring a lawyer to promptly return funds that a client is entitled to receive). *Columbus Bar Assn. v. Downey* (1992), 63 Ohio St.3d 141, 586 N.E.2d 76. Respondent was reinstated to the practice of law in October 1994. *Columbus Bar Assn. v. Downey* (1994), 71 Ohio St.3d 1206, 642 N.E.2d 630.

{¶ 2} In June 2004, relator, Columbus Bar Association, filed an amended complaint charging respondent with additional professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in February 2006. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Misconduct

*Count I*

{¶ 3} In 2002, David Swoope met with respondent to discuss an employment-discrimination matter. Respondent told Swoope that she would not represent

him, but she said that she would try, without charge, to negotiate a settlement with his former employer. Swoope did not sign a fee agreement with respondent and did not pay a retainer to her.

{¶ 4} Respondent researched Swoope's legal claims and sent a settlement demand to the attorney for Swoope's former employer. She also organized discovery-related materials for Swoope and drafted a federal complaint on his behalf.

{¶ 5} Although respondent accompanied Swoope when he filed a federal civil rights suit against his former employer, she declined to place her name on the complaint, and she again told Swoope that she would not represent him. When Swoope tried to contact respondent later, she did not return his calls.

{¶ 6} Swoope filed a grievance against respondent with relator in January 2003. In response, respondent told relator that she did not represent Swoope, although she acknowledged that she had received and reviewed relevant documents for Swoope, had contacted witnesses, had sent a letter to opposing counsel, had spoken with Swoope on several occasions, and had agreed to "assist the best way [she] could to meet the filing date" for his federal complaint. For several months, respondent did not reply to relator's other inquiries concerning Swoope's grievance. She did appear for a deposition in connection with relator's investigation, but she failed to comply with relator's deadline for providing various documents.

{¶ 7} Respondent acknowledged and the board found that respondent's actions violated DR 1–102(A)(6) (barring lawyers from engaging in conduct that adversely reflects on their fitness to practice law) and 6–101(A)(3), as well as Gov.Bar R. V(4)(G) (requiring lawyers to cooperate with and assist in any disciplinary investigation).

*Count II*

{¶ 8} Mollavi Sonii, a native of Liberia, paid respondent $3,000 to represent him in a deportation matter. Respondent filed an application for asylum on Sonii's behalf in August 1999 with the United States Immigration Court in Detroit, Michigan. Respondent and Sonii appeared for a hearing on the case in October 2000, but they were told that the hearing would be rescheduled for a later date. Neither of them received any notice of a new date for the hearing, and an immigration judge erroneously ordered Sonii's removal from the country in October 2000.

{¶ 9} Sonii learned about the judge's removal order in 2002, and he contacted respondent at that time to inquire about the status of his case. Respondent claimed during these disciplinary proceedings that she had never received the judge's order because it had been sent to her former office address. By the time

Sonii and respondent learned about the immigration judge's October 2000 order, Sonii's 180–day window for filing an appeal had passed.

{¶ 10} Respondent took no action on Sonii's behalf to challenge the judge's removal order or to remedy Sonii's failure to appeal that ruling.

{¶ 11} Sonii retained a new attorney, and that attorney filed a motion to re-open the asylum case in May 2004. An immigration judge granted that motion in August 2004.

{¶ 12} Respondent acknowledged and the board found that respondent's actions violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1) (barring a lawyer from intentionally failing to seek the lawful objectives of a client), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), and 7–101(A)(3).

### Count III

{¶ 13} In May 2000, respondent filed a notice of appearance with the United States Board of Immigration Appeals on behalf of her client Khadija Ba. Ba, a citizen of Mauritius, was appealing the denial of her application for employment authorization and was seeking asylum in the United States.

{¶ 14} Respondent did not file an appellate brief on Ba's behalf. In April 2002, the Board of Immigration Appeals dismissed Ba's appeal, explaining in its order that no brief supporting her appeal had been filed within the time allowed for filing. Respondent did not tell Ba about the board's order.

{¶ 15} Ba retained a new attorney, and that attorney filed a motion to reopen Ba's case in February 2004. The Board of Immigration Appeals denied that motion in May 2004.

{¶ 16} Respondent acknowledged and the board found that respondent's actions violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

### Count IV

{¶ 17} Sylvester Taye, a Liberian citizen, paid respondent $700 to reopen his asylum case. Respondent filed the necessary pleadings, and a hearing was scheduled for January 15, 1997. Respondent told Taye that she would seek a continuance of the hearing, and she advised Taye that he need not appear on the scheduled date. Respondent did file a motion for a continuance, but it was late. An immigration judge went forward with the hearing as scheduled, and neither respondent nor Taye appeared. The judge ordered Taye's deportation.

{¶ 18} Several years later, Taye retained a new attorney, and that attorney filed a motion to reopen Taye's case. However, the Board of Immigration Appeals denied that motion.

{¶ 19} Respondent acknowledged and the board found that respondent's actions violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

## Sanction

{¶ 20} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The aggravating factors cited by the board were respondent's prior disciplinary offenses and her initial lack of cooperation in the disciplinary process. (Respondent had initially failed to respond to relator's requests for information about the grievances filed by Sonii, Ba, and Taye, but she did later retain counsel and did cooperate with the investigation thereafter). BCGD Proc.Reg. 10(B)(1)(a) and (e).

{¶ 21} In its discussion of mitigating factors, the board noted that several witnesses—including Khadija Ba—testified at respondent's disciplinary hearing about her professionalism and her kindness. Respondent herself testified that her son began experiencing health problems in 2002 and that his illness prevented respondent from focusing on her legal practice. Respondent began to close down her practice that year, and she registered as "inactive" with this court in 2003.

{¶ 22} Stephanie Krznarich, a licensed independent social worker and certified chemical dependency counselor, also offered mitigating evidence on respondent's behalf at the disciplinary hearing. Krznarich testified that she had evaluated respondent in November 2004 and had concluded that respondent was suffering from a generalized anxiety disorder with panic attacks, dysthmia (a low-level depression), and posttraumatic stress disorder. Krznarich also explained that respondent had signed a mental-health contract with the Ohio Lawyers Assistance Program ("OLAP") in November 2004. Since then, according to Krznarich, respondent has taken her prescribed medications, has kept her medical appointments, and has progressed well.

{¶ 23} The parties jointly recommended that respondent's license to practice law be indefinitely suspended. The panel and the board issued similar recommendations.

{¶ 24} We have reviewed the board's report and the record, and we find that respondent violated all of the provisions as described above. We also adopt the recommendation of the parties and the board that an indefinite suspension is the appropriate sanction in this case.

{¶ 25} We have recently imposed indefinite suspensions in similar cases. See, e.g., *Columbus Bar Assn. v. Harris,* 108 Ohio St.3d 543, 2006-Ohio-1715, 844 N.E.2d 1202 (attorney failed to carry out contracts of employment, neglected client matters, made misrepresentations to clients, failed to return retainers, and failed to cooperate in the disciplinary investigation); *Northwestern Ohio Bar Assn. v. Lauber,* 108 Ohio St.3d 143, 2006-Ohio-419, 841 N.E.2d 770 (attorney neglected several clients' cases, failed to appear for court proceedings, and failed to cooperate in the disciplinary investigation); *Columbus Bar Assn. v. Ginther,* 108 Ohio St.3d 48, 2006-Ohio-79, 840 N.E.2d 628 (attorney neglected several clients' cases, failed to appear at scheduled court hearings, and failed to return client phone calls).

{¶ 26} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. As a prerequisite to the filing of any petition for reinstatement, respondent must (1) maintain a contract with OLAP during the period of the indefinite suspension and successfully fulfill all of the contract's terms, (2) be evaluated by a psychiatrist, psychologist, or other licensed mental-health professional within 60 days prior to her petition for reinstatement and present a written report from that professional stating that (a) respondent is able to return to the competent and ethical practice of law and (b) none of respondent's mental-health conditions will impair her ability to meet the demands of legal practice, and (3) reimburse the Clients' Security Fund for any amounts paid out by the fund as a result of respondent's misconduct and enter into binding arbitration, if asked to do so by any of the clients whose grievances gave rise to the allegations described above. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Susan C. Walker, Bridgette Roman, and Bruce A. Campbell, for relator.

Dianna M. Anelli, for respondent.