DISCIPLINARY COUNSEL *v.* NITTSKOFF.

[Cite as *Disciplinary Counsel v. Nittskoff,*

130 Ohio St.3d 433, 2011-Ohio-5758.]

*Attorneys—Misconduct—Failure to file tax returns for estate—Failure to return*

*files upon client's request—Mismanagement of client trust account—*

*Failure to cooperate with disciplinary authority—Failure to inform clients*

*of lack of professional-liability insurance—Indefinite suspension.*

(No. 2010-2245—Submitted April 6, 2011—Decided November 10, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 09-089.

_____

**Per Curiam.**

{¶ 1} Respondent, David Nittskoff, of South Euclid, Ohio, Attorney Registration No. 0025471, was admitted to the practice of law in Ohio in 1970.

{¶ 2} In early 2009, relator, Disciplinary Counsel, received a grievance alleging that Nittskoff had failed to inform his clients that he did not carry malpractice insurance and had neglected a client matter, causing the client to incur significant tax penalties.

{¶ 3} In December 2009, relator filed a formal complaint alleging that Nittskoff had committed several violations of the Ohio Code of Professional Responsibility and the Rules of Professional Conduct.[1] Nittskoff did not answer.

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

**{¶ 4}** On April 30, 2010, relator filed an amended complaint; again, Nittskoff did not answer. Relator filed a motion for default judgment on September 21, 2010.

**{¶ 5}** The matter was referred by the board to a master commissioner, who made findings of fact and conclusions of law and recommended a one-year suspension from the practice of law with six months stayed, but without naming any conditions. The Board of Commissioners on Grievances and Discipline adopted the findings of fact and conclusions of law of the master commissioner, but recommended that Nittskoff be suspended from the practice of law for six months.

**{¶ 6}** We issued an order to show cause why the recommendation of the board should not be adopted by the court. Relator responded, objecting to the board's recommendation and requesting this court to enter an order disbarring Nittskoff. Nittskoff did not file a response.

**{¶ 7}** We adopt the board's findings of fact and conclusions of law, but suspend Nittskoff from the practice of law in Ohio indefinitely. We additionally order that as a condition of reinstatement Nittskoff shall satisfy the civil judgment obtained against him on behalf of the estate of Jack Gordon and shall submit quarterly progress reports to relator on his payment of the judgment.

**Misconduct**

**{¶ 8}** Nittskoff and the late Jack Gordon formed an attorney-client relationship beginning in the late 1970s and early 1980s. Nittskoff also represented other members of Gordon's family. Gordon operated a bicycle shop near downtown Cleveland.

**{¶ 9}** Gordon died on September 27, 2005, leaving an estate and the Jack Gordon Revocable Trust. Stanley P. Frankel, successor trustee of the revocable trust and administrator of the estate, contacted Nittskoff after Gordon's death. Nittskoff then contacted Gordon's heirs and attempted to determine the extent of

the trust's assets. He then prepared partially completed handwritten drafts of probate court filings and conferred with Frankel.

{¶ 10} In 2006 and early 2007, Frankel continued to ask Nittskoff for the status of Gordon's estate. Nittskoff informed Frankel that everything was being taken care of and that he would take care of any tax penalty that might be assessed. Frankel terminated Nittskoff on April 2, 2007, due to poorly prepared probate forms, errors in draft estate-tax returns, and his failure to file estate-tax returns, which Frankel feared would lead to interest and penalties.

{¶ 11} On November 5, 2007, the Internal Revenue Service informed Frankel that an estate-tax return had not been filed and that the Jack Gordon estate owed a penalty of $317,146.20 and interest in the amount of $134,358.26, totaling $451,504.46. Frankel then repeatedly requested that Nittskoff pay both the penalty and interest or reimburse the estate for the entire amount. Nittskoff never paid either the penalty or interest, nor did he ever respond to Frankel. The estate paid the taxes, penalty, and interest.

{¶ 12} In October 2008, Frankel filed a legal-malpractice claim against Nittskoff and Nittskoff's law firm in the Cuyahoga County Court of Common Pleas. See *Frankel v. Nittskoff*, Cuyahoga C.P. No. CV-08-673876. In April 2009, the court entered a default judgment against Nittskoff and the firm in the amount of $451,504.46, and Frankel filed a judgment lien. In March 2010, acting pro se, Nittskoff filed a motion for relief from judgment pursuant to Civ.R. 60(B), but the motion was denied.

{¶ 13} Frankel, through his attorney, also requested that Nittskoff return all file materials relating to the trust and the estate, but Nittskoff did not comply. Frankel stated in an affidavit dated September 8, 2010, that Nittskoff still had not returned any of the requested materials.

**{¶ 14}** On March 25, 2009, relator sent Nittskoff a letter of inquiry regarding the grievance. However, Nittskoff did not respond, nor did he respond to relator's second inquiry.

**{¶ 15}** On July 21, 2009, in response to a notice of deposition and subpoena duces tecum, Nittskoff appeared at relator's office with the requested materials. During the deposition, Nittskoff testified that he had failed to maintain professional-liability insurance for himself and his firm and that he had not informed any of his clients of this fact.

**{¶ 16}** In 2009, Nittskoff maintained an interest-bearing account at Charter One Bank. On October 27, 2009, relator received a notice from the bank that the IOLTA account was overdrawn. During its investigation, relator discovered that the certificate of authority for the Nittskoff firm had been canceled by the Ohio secretary of state in 2007 for failure to pay franchise taxes.

**{¶ 17}** On November 30, 2009, relator sent a letter of inquiry regarding the IOLTA-account overdraft via certified mail; Nittskoff did not respond. Nor did Nittskoff send a response to relator's second letter of inquiry, sent on December 31, 2009.

**{¶ 18}** On December 4, 2009, a probable-cause panel certified the matter to the board. The first formal complaint was filed on December 7, 2009, asserting two counts: (1) that Nittskoff failed to file the requisite tax returns for the Jack Gordon estate, did not reimburse the estate for the tax penalties assessed against it, and failed to pay the judgment obtained against him by the successor trustee and the estate administrator and (2) that he failed to inform any of his clients, including Frankel, that neither he nor the Nittskoff firm maintained professional-liability insurance.

**{¶ 19}** Nittskoff never filed an answer. On April 30, 2010, relator filed an amended complaint to add a third count, alleging that Nittskoff failed to maintain

4

sufficient funds in his IOLTA account and failed to respond to relator's letters of inquiry. Again, Nittskoff did not file an answer.

{¶ 20} On September 21, 2010, relator filed a motion for default. The master commissioner recommended a sanction of a one-year suspension from the practice of law with six months suspended. The board adopted the findings of fact and conclusions of law of the master commissioner and granted the motion for default. However, the board rejected relator's recommendation that Nittskoff be disbarred and recommended that he be suspended from the practice of law for six months.

*Count One*

{¶ 21} With respect to count one, which pertains to Nittskoff's conduct regarding the Gordon estate and trust matters, the board found by clear and convincing evidence that he had violated DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (engaging in conduct prejudicial to the administration of justice), DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law), DR 6-101(A)(1) (handling a legal matter that he is not competent to handle), 6-101(A)(3) (neglecting a legal matter entrusted to him) and Prof.Cond.R. 1.1 (failing to provide competent legal representation to a client), 1.3 (failing to act with reasonable diligence and promptness), 1.4(a)(2) (failing to reasonably consult with a client about the means for achieving the client's objectives), 1.4(a)(3) (failing to keep the client reasonably informed), 1.4(a)(4) (failing to respond to requests for information from the client), and 1.4(b) (failing to explain a matter so as to permit the client to make informed decisions).

*Count Two*

{¶ 22} On count two, the board further found by clear and convincing evidence that Nittskoff's failure to inform his clients that he did not maintain professional-liability insurance constituted a violation of DR 1-102(A)(6) and 1-

104(A) (failing to inform a client that the lawyer does not maintain professional-liability insurance).

*Count Three*

**{¶ 23}** On the third and final count of the amended complaint, the board found that Nittskoff's misconduct in allowing an overdraft of his IOLTA account and his failure to respond to relator's two letters of inquiry violated Prof.Cond.R. 8.1(b) (failing to respond to a request for information from a disciplinary authority in connection with a disciplinary matter) and 8.4(h).

**Sanction**

**{¶ 24}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination on sanctions, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 25}** The board found that Nittskoff's lack of cooperation in the disciplinary process, including his failure to answer the complaint and the amended complaint, was an aggravating factor. See BCGD Proc.Reg. 10(B)(1)(e). The board also found an aggravating factor in the vulnerability of and resulting harm to the victims of Nittskoff's misconduct. See BCGD Proc.Reg. 10(B)(1)(h).

**{¶ 26}** As mitigating factors, the board found that Nittskoff had no prior disciplinary record and no dishonest or selfish motive. See BCGD Proc.Reg. 10(B)(2)(a) and (b). The board also found that Nittskoff's compliance with the subpoena duces tecum demonstrated a full and free disclosure to the board and a

cooperative attitude toward the proceedings. See BCGD Proc.Reg. 10(B)(2)(d). However, we believe that any mitigating effect of Nittskoff's compelled appearance at the deposition is outweighed by his failure to respond to relator's correspondence and his failure to file an answer or otherwise appear in this action. The board found the imposition of other penalties or sanctions, namely the civil judgment against Nittskoff, to be mitigating under BCGD Proc.Reg. 10(B)(2)(f).

**{¶ 27}** Relator filed objections to the board's report, arguing that Nittskoff's conduct warrants disbarment rather than a six-month suspension as recommended by the board. Relator argues that the board erroneously relied on Nittskoff's "entirely unverified" deposition testimony. Had Nittskoff participated in the formal disciplinary process as required, relator argues, relator would have been able to test Nittskoff's statements through regular discovery.

**{¶ 28}** Relator further argues that the board relied on claims by Nittskoff that are entirely irrelevant to the disciplinary case and the determination of the appropriate sanction. For example, the board cited Nittskoff's testimony that he did not ask the IRS for an extension to file tax returns because he did not believe that the estate was large enough to pay taxes. Relator argues that while that statement may be an accurate reflection of Nittskoff's reasoning, it is not relevant or mitigating. As another example, relator cites the board's reliance on Nittskoff's "irrelevant and hearsay" deposition testimony to conclude that the value of Gordon's bicycle shop was zero.

**{¶ 29}** Relator argues that the only relevant information the board needed in order to determine the appropriate sanction in the Gordon matter is that (1) Nittskoff agreed to provide legal representation to the Jack Gordon estate and to Frankel and (2) Nittskoff did not file certain estate-tax returns and failed to ask for an extension of time to file. Relator argues that "[t]his Court should reject the board's recommendation and enter a sanction that is consistent with the facts of this case and prior decisions."

{¶ 30} We repeatedly have recognized that neglect of an entrusted legal matter, coupled with a failure to cooperate in the ensuing disciplinary investigation, warrants an indefinite suspension. See, e.g., *Disciplinary Counsel v. Meade*, 127 Ohio St.3d 393, 2010-Ohio-6209, 939 N.E.2d 1250, ¶ 20. *Meade* involved an attorney who failed to cooperate in multiple disciplinary investigations, failed to act with reasonable diligence and promptness in representing a client resulting in the dismissal of an appeal of a deportation order, and failed to deliver the client's file to her new counsel. We ordered an indefinite suspension. See also *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10 (indefinite suspension imposed on attorney who failed to return unearned fees and failed to cooperate with disciplinary authorities); *Cleveland Bar Assn. v. Davis*, 121 Ohio St.3d 337, 2009-Ohio-764, 904 N.E.2d 517 (indefinite suspension appropriate for attorney who neglected several of his clients, failed to refund retainers for work he did not perform, and failed to cooperate in the disciplinary investigation); *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891 (attorney indefinitely suspended for neglecting clients' cases, mismanaging his client trust account, and failing to cooperate throughout the disciplinary process); *Columbus Bar Assn. v. Harris*, 108 Ohio St.3d 543, 2006-Ohio-1715, 844 N.E.2d 1202 (indefinite suspension imposed on attorney who neglected clients' cases, failed to keep clients apprised of the status of their cases, allowed her malpractice insurance to lapse, and did not cooperate with the disciplinary process).

{¶ 31} The facts of this case are closer to the facts in the foregoing decisions than to those in which less severe sanctions were imposed. Here, the evidence demonstrates clearly that Nittskoff neglected his client by failing to properly file estate-tax returns or request an extension, thereby causing the client to incur a significant tax penalty, totaling $451,504.46. Moreover, Nittskoff neglected to maintain professional-liability insurance and did not inform his

clients of that fact. Nittskoff also neglected to maintain adequate records of his IOLTA account, which ultimately resulted in an overdraft. Finally, when relator attempted to investigate the IOLTA-account matter, Nittskoff failed to cooperate.

{¶ 32} In accordance with our previous decisions involving neglect of entrusted legal matters combined with a failure to cooperate in the ensuing disciplinary investigation, we hereby indefinitely suspend Nittskoff from the practice of law in Ohio. We further order as a condition of reinstatement that Nittskoff shall satisfy the civil judgment obtained against him on behalf of the estate of Jack Gordon and shall also submit quarterly progress reports to relator on his payment of the judgment.

{¶ 33} Costs are taxed to Nittskoff.

Judgment accordingly.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

———————————

**PFEIFER, J., dissenting.**

{¶ 34} I agree with the majority that attorney Nittskoff violated several provisions of the Ohio Code of Professional Responsibility and the Rules of Professional Conduct and that he should be sanctioned. I dissent because I believe that an indefinite suspension is excessive given the misconduct that Nittskoff committed.

{¶ 35} At its core, this case is a garden-variety malpractice case. Based merely on the malpractice, it is unlikely that this court would have indefinitely suspended Nittskoff from the practice of law. But this case also includes repeated failures to respond and cooperate in the disciplinary process. In my opinion, that aggravating factor does not outweigh the underlying malpractice case and the mitigating factors.

**{¶ 36}** The majority opinion cites five prior disciplinary cases to justify its imposition of an indefinite suspension. In four of those cases, the attorney who was indefinitely suspended committed violations involving multiple clients. This case does not involve multiple clients; only one client was neglected, though the neglect was substantial and the effect was extremely expensive for the client. The fifth case cited by the majority opinion involved more aggravating factors than this case, including a selfish motive, which is lacking in this case.

**{¶ 37}** Viewing the case as a whole and after considering all the aggravating and mitigating factors, I conclude that the violations do not rise to the level necessary to impose an indefinite suspension. I would impose the sanction recommended by the Board of Commissioners on Grievances and Discipline and suspend Nittskoff from the practice of law for six months.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, Chief Assistant Disciplinary Counsel, for relator.

_____