JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Snavely Development Company ("appellant") appeals the directed verdict granted by the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} On July 9, 2004, appellant filed its complaint against appellee Acacia Country Club ("Acacia") in Cuyahoga County Common Pleas Court, Case No. CV-04-535541. On September 17, 2004, Acacia filed its answer. A jury trial commenced on May 10, 2005. Appellant presented its case to the jury, introducing witness testimony and exhibits, for five days.
 {¶ 3} At the close of appellant's case, Acacia moved for a directed verdict, pursuant to Civ.R. 50. On May 17, 2005, the judge granted a directed verdict in favor of Acacia. On May 17, 2005, the judge submitted a journal entry granting Acacia's motion for directed verdict. On June 2, 2005, appellant filed its appeal of the court's granting of Acacia's motion for directed verdict.
 {¶ 4} According to the record, the Snavely Development Company is a locally owned and operated family business, which focuses on property development and construction. John Snavely is a founding member, who has been involved in the construction industry for many years.
 {¶ 5} Acacia, by and through its members and board of directors, engaged the services of appellant to assist in the sale, lease and development of approximately 12 acres, out of a total of 175 acres of land Acacia owned. Acacia contemplated developing portions of the property to build a multimillion dollar clubhouse. Accordingly, Jim Roddy at Acacia contacted John Snavely about Acacia's ideas for development. The two met to discuss the development of Acacia's land.
 {¶ 6} After various meetings, appellant and Acacia entered into a written contract regarding the development of the land owned by Acacia. Acacia's objective was to commercially develop approximately 12 to 14 acres of its property in order to generate enough income to completely finance the clubhouse without having to charge its members.
 {¶ 7} On or about October 20, 1999, appellant and Acacia entered into a written predevelopment agreement, wherein Acacia granted appellant exclusive rights to develop, sell and/or lease various portions of Acacia's property.
 {¶ 8} The written agreement signed by both parties states the following,
"Snavely is to fund all expenses under the following terms andconditions:
 "Fund all out-of-pocket expenses to accomplish Phase I(completed $48,465.73) and Phase II — estimated to be anadditional $90,000.
 "All `out-of-pocket expenses' as described above are to bereimbursed to Snavely with interest at the prime rate (asestablished by City Bank) plus 1% conditioned on thefollowing:
 "1) The successful execution and delivery of land leaseswhich are acceptable to the board of directors of the AcaciaCountry Club and that the Acacia Country Club elects to proceedwith the project.
 "2) the Acacia Country Club obtains financing (predicated onthe land leases described in one (1) above) to proceed with the`Acacia Project'. * * *"
(Emphasis added.)
 {¶ 9} Appellant agreed to fund all out-of-pocket expenses associated with the development.[1] Appellant also agreed that it would be entitled to reimbursement of its out-of-pocket expenses only if it: 1) delivered executed land leases to Acacia; 2) the leases were acceptable to Acacia; 3) Acacia, within its discretion, elected to proceed with the leases; and 4) Acacia obtained financing for the project predicated on the leases.[2] The parties also agreed that Acacia would compensate appellant for its work if Acacia failed to select appellant as the master developer; or if Acacia decided not to proceed with the project after appellant provided Acacia with: 1) a master plan for development; 2) a feasible program; and 3) a transaction that could proceed.
 {¶ 10} Appellant began formulating a master plan for the development of fourteen acres in late 1999. This master plan was known as the Acacia Shops. This plan envisioned a high-end retail center similar to Legacy Village. Appellant incurred about $180,000 in expenses and spent a year working on the master plan. However, appellant decided against the Acacia Shops project and canceled the master plan in October 2000.
 {¶ 11} Appellant developed a second master plan in December 2000. This time, appellant decided to pursue development of the land in three sections instead of one. The three development sections would consist of the following: 1) a portion of the land to be leased for four restaurants/retail outlets; 2) a portion of the land to be sold for a hotel; and 3) a portion to be sold for condominiums.
 {¶ 12} As with the Acacia Shops, Acacia had to be able to obtain financing for the new clubhouse in order for the transaction to proceed. Appellant also had to obtain purchase agreements of the hotel and condominium land, and the leases and purchase agreements had to be presented to Acacia at approximately the same time.
 {¶ 13} Appellant presented Acacia with letters of intent to lease three of the four restaurant/retail pads, one from Sterling Jeweler, one from Brinkers International, and one from Snavely itself. At no time was a fourth letter of intent ever obtained by appellant. Appellant admitted that the letters of intent presented to Acacia did not constitute leases and/or purchase agreements.[3] In fact, all three of the letters of intent to lease received by Acacia were specifically conditioned on a determination being made by November 7, 2001, that the full 14 acres could be satisfactorily developed. Therefore, on November 7, 2001, when a fourth letter of intent had not been received and Acacia had not received an acceptable offer on the condominium land, all of the letters of intent received by Acacia expired.
 {¶ 14} On December 10, 2001, appellant decided to put the condominium deal on hold pending the completion of the restaurant pads. As a consequence, by the end of 2001, all letters of intent had expired, there was no lease and/or purchase agreement presented, and the hotel deal was no longer viable.
 {¶ 15} In early 2002, Acacia received an offer from a group known as Fisher Wald to purchase the entire country club for $22 million. This offer was unsolicited and rejected by Acacia. On May 16, 2002, appellant refused to proceed any further under the 1999 contract. Appellant wanted to modify its previous agreement with Acacia. Acacia refused and appellant filed this lawsuit. Appellant is now appealing the lower court's directed verdict for Acacia.
 II. {¶ 16} Appellant's first assignment of error states the following, "The trial court erred as a matter of law by failing to satisfy the requirements of the Ohio Civil Rule 50(A)(4) and 50(E) when the trial court failed to set forth in writing the basis for grantor, the defendant Acacia Country Club's motion for a directed verdict after five days of a jury trial."
 {¶ 17} Appellant's second assignment of error states the following, "The trial court erred as a matter of law by granting the defendant Acacia Country Club's motion for a directed verdict when construing the evidence most strongly in favor of the Snavely Development Company as the non-moving party pursuant to Ohio Civil Rule 50(A)(4), and where the trial court erred on the evidence by finding against the Snavely Development Company on all of its causes of action when applying to the standard that reasonable minds could come to meet one conclusion adverse to the Snavely Development Company on all determinative causes."
 III. {¶ 18} Civ.R. 50(A)(4), motion for directed verdict, and Civ.R. 50(E), statement of basis of decision, state the following,
"(4) When granted on the evidence. When a motion for adirected verdict has been properly made, and the trial court,after construing the evidence most strongly in favor of the partyagainst whom the motion is directed, finds that upon anydeterminative issue reasonable minds could come to but oneconclusion upon the evidence submitted and that conclusion isadverse to such party, the court shall sustain the motion anddirect a verdict for the moving party as to that issue.
"* * *
"(E) Statement of basis of decision. — When in a jury trial acourt directs a verdict or grants judgment without or contrary tothe verdict of the jury, the court shall state the basis for itsdecision in writing prior to or simultaneous with the entry ofjudgment. Such statement may be dictated into the record orincluded in the entry of judgment."
 {¶ 19} A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); Crawford v. Halkovics (1982),1 Ohio St.3d 184; The Limited Stores, Inc. v. Pan American WorldAirways, Inc., 65 Ohio St.3d 66, 1992-Ohio-116.
 {¶ 20} A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of this claim. Cooper v. Grace Baptist Church (1992),81 Ohio App.3d 728, 734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v. Tanner (1990), 66 Ohio App.3d 693,695; Vosgerichian v. Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943. Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. Since a directed verdict presents a question of law, an appellate court conducts a de novo review of the lower court's judgment. Howellv. Dayton Power and Light Co. (1995), 102 Ohio App.3d 6, 13;Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405,409.
 {¶ 21} In the case sub judice, appellant failed to object to the trial court's granting of appellee's motion for directed verdict in a timely manner. After the motion for directed verdict was argued by Snavely and Acacia, Snavely did not object to the oral order of the trial court. Moreover, Snavely also failed to request written findings at this time.[4]
 {¶ 22} Snavely waived its right to appeal the trial court's alleged failure to state the basis for its decision when Snavely failed to timely raise the alleged error with the lower court.
 {¶ 23} "Although the trial court should have explained the reasons for its directed verdict pursuant to Civ.R. 50(E), the plaintiffs waived that provision by failing to raise that error in a timely fashion in the trial court. Campbell v. Pritchard
(1991), 73 Ohio App.3d 158, 164; Grange Mutual Ins. Co. v.Fleming (1982), 8 Ohio App.3d 164, 166. There is nothing to be gained by remanding this case for a new trial." Semirale v.Rhea (May 19, 1994), Cuyahoga App. No. 65906.
 {¶ 24} Although the trial court did not dictate the basis for its decision into the record, the judgment entry stated that:
"This case proceeded to trial on May 10, 2005. Plaintiffpresented its evidence and rested on May 16, 2005. Defendantthereafter moved for directed verdict on all claims asserted byplaintiff pursuant to Rule 50 of the Ohio Rules of CivilProcedure. After construing the evidence presented most stronglyin favor of the plaintiff, this court finds that reasonable mindscould come to but one conclusion, and that conclusion is adverseto the plaintiff. Thus, defendant's motion for directed verdictis hereby granted and judgment is entered in favor of thedefendant on all claims at plaintiff's costs."[5]
 {¶ 25} Although Civ.R. 50(E) provides that the trial court shall state the basis for its decision to direct a verdict, the party against whom the motion is granted waives his right to protest the absence of this requirement by failing to timely raise the error to the trial court. Darcy v. Bender (1980),68 Ohio App.2d 190, 192. Appellant did not timely object to the court's basis as set forth in the judgment entry. If further explanation was required, it was incumbent upon appellants to request such from the trial court. Grange Mut. Cas. Co. v.Fleming (1982), 8 Ohio App.3d 164.
 {¶ 26} We have reviewed the record and find that appellant failed to timely raise its first alleged error with the trial court. It is well established that errors in the trial court, which could have been brought to the trial court's attention but were not, are waived and cannot be raised for the first time on appeal.
 {¶ 27} Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed. Nor do appellate courts have to consider an error which the complaining party could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 28} Accordingly, appellant's first assignment of error is overruled.
 {¶ 29} Appellant argues in its second assignment of error that the trial court erred as a matter of law by granting Acacia's motion for directed verdict. We do not find merit in this argument.
 {¶ 30} Appellant argues that it is entitled to both reimbursement of its out-of-pocket expenses and compensation for the work it performed under the terms and conditions of the contract. However, a review of the evidence demonstrates that appellant failed to satisfy the terms of the contract.
 {¶ 31} Appellant concedes that it agreed to fund all out-of-pocket expenses necessary for the development of the project. Moreover, according to the contract, appellant was required to deliver executed land leases that were acceptable toAcacia, and Acacia was to actually obtain financing before the contractual conditions would be satisfied.
 {¶ 32} In addition, as conditions precedent to appellant receiving payment, Acacia had to: 1) fail to select appellant as the master developer; or 2) decide not to proceed with the project after appellant provided Acacia with a master plan, a feasible program, and a transaction that could proceed. Appellant had to provide Acacia with acceptable leases and purchase agreements in order to obtain financing for a new clubhouse before these requirements would be satisfied. The evidence demonstrates that appellant failed to meet its contractual requirements.
 {¶ 33} Appellant only provided Acacia with three letters of intent; these letters do not constitute leases. Moreover, a fourth letter of intent was never obtained by appellant. Therefore, after more than two years, there were no leases or purchase agreements, there were insufficient letters of intent, the condo deal was incomplete, and the hotel deal was no longer viable. The evidence in the record demonstrates that appellant failed to satisfy its contractual obligations.
 {¶ 34} We find that the trial court acted properly when it determined that reasonable minds could come to but one conclusion based on the evidence presented.
 {¶ 35} Accordingly, appellant's second assignment of error is overruled.
 {¶ 36} The lower court's decision is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J., and Mary Eileen Kilbane, J.,concur.
[1] Tr. 149, 721; Tr. Ex. JS-1.
[2] Tr. Ex. JS-1 at p. 2.
[3] Tr. 516, 603.
[4] Tr. 814.
[5] See trial court's May 17, 2005 journal entry.