[Cite as *Simbo Properties, Inc. v. M8 Realty, L.L.C.*, 2019-Ohio-3091.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SIMBO PROPERTIES, INC.,　　　　　:

　　　Plaintiff-Appellant,　　　　:

　　　　　　　　　　　　　　　　　No. 107161

　　　v.　　　　　　　　　　　　:

M8 REALTY, L.L.C.,　　　　　　　:

　　　Defendant-Appellee.　　　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-856616

---

*Appearances:*

Paul W. Flowers Co., L.P.A., Paul Flowers, and Louis E. Grube, *for appellant.*

Frantz Ward, L.L.P., James B. Niehaus, and Kelley J. Barnett, *for appellee.*

RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiff-appellant Simbo Properties, Inc. ("Simbo") appeals from verdicts finding in favor of defendant-appellee M8 Realty, L.L.C. ("M8") on matters pertaining to a commercial real estate lease agreement between Simbo, the owner and landlord, and M8, the tenant. For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} In December 2012, Simbo and M8 entered into a written lease agreement pursuant to which Simbo leased a commercial real property to M8. The parties negotiated the lease agreement to govern M8's tenancy. The initial term of the lease agreement was for 18 months, ending on June 19, 2014.

{¶ 3} During M8's tenancy, Simbo claimed that M8 violated several provisions of the written lease agreement resulting in the filing of Simbo's lawsuit. In particular, during M8's tenancy, Simbo claimed M8 caused property damage, including a blockage in the storm sewer and destruction of a flag pole. Simbo also claims M8 did not pay real estate taxes that Simbo claims M8 was required to pay under the lease agreement. Lastly, Simbo further claimed M8 was subject to an automatic renewal term of the lease agreement and was therefore contractually obligated to pay rent from June 2014 through December 2014.

{¶ 4} Simbo filed a four count complaint against M8 on January 4, 2016, seeking the following: Count 1 — rent (in excess of $150,000); Count 2 — real estate taxes ($32,158.34); Count 3 — property damage (in excess of $30,000 for flag pole and storm sewer); Count 4 — breach of other pertinent lease provisions. M8 filed its answer and counterclaim on February 5, 2016. M8's counterclaim stated M8 provided timely notice to Simbo of its intent not to renew the lease and therefore no rent was owing. M8's counterclaim asserted an alternate claim for relief in the event the trial court found the lease agreement did, in fact, renew. In the alternative, M8 claimed Simbo breached M8's right to quiet enjoyment and constructively evicted

M8 from the premises when the commercial property was leased to a new tenant. M8 filed an amended counterclaim on October 20, 2016. The amended counterclaim was identical to the original counterclaim except that paragraph 5 relating to written notice for the automatic renewal was removed from the amended pleading. Discovery proceeded, and motions for summary judgment were filed by both parties. Simbo's motion sought summary judgment on Counts 1 and 3. M8's motion sought judgment on Counts 1 and 4 of Simbo's complaint. On January 24, 2017, the trial court denied Simbo's motion for summary judgment and granted M8's motion for summary judgment on Count 4 only. The matter proceeded to trial on Counts 1, 2, and 3 of Simbo's complaint on July 24, 2017.

{¶ 5} During trial, M8 was granted a directed verdict on Count 3 alleging that M8 created a storm sewer blockage on the leased premises. A jury heard the remaining issues and rendered a verdict in favor of M8 on Count 1, the outstanding rent due, finding that there was no automatic renewal term. Simbo had sought an award under Count 1 in excess of $150,000. This was the largest dollar amount of damages requested in the lawsuit. A verdict in favor of Simbo was entered on Count 2, real estate taxes, in the amount of $32,158.34. On the remaining issue set forth in Count 3 — the replacement of the flag pole — a verdict was rendered for Simbo in the amount of $5,000. Simbo also prevailed on M8's counterclaim that sought an unspecified amount of damages.

{¶ 6} On August 31, 2017, Simbo filed a motion for additur and prejudgment interest and a motion for attorney fees and legal expenses. On the

same date, M8 filed a motion to amend its counterclaim to conform to the evidence and motion for new trial or remittitur, or for judgment notwithstanding the verdict as well as a motion for attorney fees.

{¶ 7} Due to a concern about a potential conflict, the trial judge recused herself from the case and the case was transferred to the administrative judge on October 11, 2017, for "good cause shown." On October 16, 2017, the administrative judge held a hearing on the postjudgment motions filed by the parties. The trial court issued its ruling on the postjudgment motions on January 9, 2018. On the issue of the award of attorney fees under the lease agreement, the trial court determined M8 was the "prevailing party" since it won the "main" issue in the lawsuit and, as a result, was entitled to all attorney fees as specified in the lease agreement. M8's motion to amend its counterclaim to conform to the evidence and motion for new trial or remittitur, or for judgment notwithstanding the verdict was denied. The trial court denied Simbo's motion for additur and prejudgment interest and its motion for attorney fees and legal expenses. Simbo filed a motion for reconsideration or clarification or in the alternative, Civ.R. 60(B) relief from judgment. This motion was denied on February 1, 2018.

{¶ 8} On February 5, 2018, Simbo filed an appeal challenging the trial court's judgment. The appeal was dismissed since the trial court's judgment was not a final appealable order where the issue of attorney fees was not resolved. On remand, Simbo filed a motion for a new trial arguing the original trial judge's recusal precluded postjudgment issues from being fairly adjudicated by the administrative

judge.  In addition, Simbo filed a brief on the pending issue of legal fees.  A hearing was held on February 21, 2018, on the postjudgment issue of legal fees.  On April 25, 2018, the trial court denied Simbo's motion for a new trial and awarded M8 attorney fees and expenses in the amount of $238,335.73.  Simbo filed the instant appeal.

**Law and Analysis**

## I. Directed Verdict

{¶ 9}   In its first assignment of error, Simbo argues that the trial court erred by granting a directed verdict on Count 3 alleging M8 created a storm sewer blockage.  Specifically, Simbo claimed it introduced sufficient evidence that M8's actions caused damage to the commercial property's storm sewer and that the trial court's judgment on this issue of causation was error.

{¶ 10}  "Appellate review of a motion for a directed verdict is de novo." *Ridley v. Fed. Express*, 8th Dist. Cuyahoga No. 82904, 2004-Ohio-2543, ¶ 82.  "A directed verdict is appropriate only where the party opposing it has failed to adduce any evidence on the essential elements of his claim."  *Cooper v. Grace Baptist Church, Inc.,* 81 Ohio App.3d 728, 734, 612 N.E.2d 357 (10th Dist.1992).  "The question to be determined involves a testing of the legal sufficiency of the evidence to take the case to the jury, and is a question of law, not of fact."  *Hargrove v. Tanner*, 66 Ohio App.3d 693, 695, 586 N.E.2d 141 (9th Dist.1990).  "Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses."  *Snavely Dev. Co. v. Acacia Country Club*, 8th Dist. Cuyahoga No. 86475, 2006-Ohio-1563, ¶ 20.

{¶ 11} When evaluating a directed verdict on appeal, the reviewing "'court must determine whether any evidence exists on every element of each claim or defense for which the party has the burden to go forward.'" *Claris, Ltd. v. Hotel Dev. Servs., L.L.C.*, 10th Dist. Franklin No. 16AP-685, 2018-Ohio-2602, ¶ 27, citing *Eastley v. Volkman*, 132 Ohio St.3d 28, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 25. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41. The claimed "'damages must be the natural and proximate result of the defendant's breach.'" *Claris, Ltd.* at ¶ 28, citing *Mills v. Best W. Springdale*, 10th Dist. Franklin No. 08AP-1022, 2009-Ohio-2901, ¶13.

{¶ 12} Simbo argues it has established sufficient evidence of proximate cause through owner Mark Sims's lay testimony and this, absent expert testimony, is sufficient to defeat a motion for directed verdict. At trial, Sims detailed a March 2014 incident with a leaky oil tanker and how the subsequent clean-up caused a blockage in the property's storm sewer. He testified that M8 used Oil-Dri pellets to absorb the spilled oil, but M8 failed to clean up the Oil-Dri pellets in a timely manner. Sims observed the Oil-Dri pellets being washed into the storm sewer. The commercial property subsequently flooded in July 2014, which required plumbers to remedy the situation. The plumbers returned in October 2014 for ongoing plumbing issues.

{¶ 13} Mark Sims claimed the July and October plumbing issues were caused by a storm sewer blockage stemming from the Oil-Dri pellets and their improper disposal by M8 — a violation of the terms of the lease requiring M8 to not cause damage to the leased premises. Simbo sought reimbursement from M8 for the plumbing repairs. No testimony, except Sims's statements, was introduced regarding the storm sewer blockage and how M8's actions caused the blockage. Invoices detailing the plumbing work made no mention of the Oil-Dri pellets or the source of the blockage. The only testimony offered was from Mark Sims. The trial court found that this testimony was insufficient to establish causation. The trial court stated:

> [N]obody, including Mr. Sims said the pellets were — there were this many of them or this was taken out, or this plugged this; or nobody talked about how it was that pellets being down there somehow necessitated or caused the work to be performed as delineated in these invoices.
>
> And again, I don't see the word — well, let — in fact there is also talk about a possible break. I don't think causation — I don't think there has been sufficient evidence of causation. I'm not discounting Mr. Sims' testimony to the extent that takes us only one step as to what he personally saw. Beyond that, there is no testimony as to some pellets that he saw in the sewer causing the damage or any damage so as to necessitate the work performed on the sewers as outlined in these invoices; so I think that really takes care of the Motion for Directed Verdict on Count 3 as it relates to the sewer.

(Tr. 554-555.)

{¶ 14} In order for a party to a contract to recover damages as a result of another's breach of that contract, such damages must be caused by the breach, or such damages would not have occurred had the defendant performed the promises

which he made in the contract. *Cammerer Farms v. Terra Internatl., Inc.*, 12th Dist. Warren No. CA91-02-020, 1991 Ohio App. LEXIS 6269, 8 (Dec. 23, 1991). Mark Sims testified to the incident with the Oil-Dri pellets and the subsequent repairs by the plumber. Mark Sims testified that the plumber lowered a video camera into the sewer to determine the source of the clog, and the video showed the clog was caused by the Oil-Dri pellets. However, the video footage was not presented at trial to support Sims's assertion that the pellets caused the blockage. Photographs obtained during the repairs were introduced as exhibits, but did not depict Oil-Dri pellets. None of the plumbing invoices referenced a clog or blockage caused by Oil-Dri pellets. The cause of the blockage was left to speculation. Where causation is not adequately proven and the jury will be left to speculate on this issue, granting a direct verdict is appropriate. *Id.* at 11.

{¶ 15} Simbo argues a directed verdict was granted because the plaintiff did not introduce expert testimony, but relied upon the testimony of Mark Sims. Historically, the Ohio Supreme Court has held that "expert opinions are not required when the conduct at issue is within the jury's general experience and knowledge." *Baiko v. Mays*, 140 Ohio App.3d 1, 7, 746 N.E.2d 618 (8th Dist.2000). However, the trial court did not address, nor will this court, whether expert testimony was required. Simbo needed to introduce evidence showing causation between the Oil-Dri pellets and the plumbing issues, yet insufficient evidence was provided. M8's directed verdict was granted because Mark Sims's testimony, alone, was insufficient evidence to establish causation, not because expert testimony was absent.

{¶ 16} Because we conclude that there was insufficient evidence to show M8's actions caused the storm sewer blockage, we overrule Simbo's first assignment of error.

## II. Jury Instructions

{¶ 17} In Simbo's second assignment of error, Simbo asserts the trial judge erred, as a matter of law, by furnishing inapplicable and misleading instructions to the jury that were incorrect. Specifically, Simbo argues the trial court's alternative pleading instruction to the jury relating to M8's counterclaim was an incorrect statement of the law.

{¶ 18} "A trial court is obligated to provide jury instructions that correctly and completely state the law." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22, citing *Sharp v. Norfolk & W. Ry.*, 72 Ohio St.3d 307, 1995-Ohio-224, 649 N.E.2d 1219. "The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review." *Cromer* at ¶ 22. "'An inadequate jury instruction that misleads the jury constitutes reversible error.'" *Cox v. MetroHealth Med. Ctr. Bd. of Trustees*, 2015-Ohio-2950, 39 N.E.3d 843, ¶ 41 (8th Dist.), citing *Groob v. KeyBank*, 108 Ohio St.3d 48, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 32.

{¶ 19} Simbo argues the trial court's jury instruction addressing alternative and hypothetical pleadings contained an incorrect statement. The jury instruction in question read:

A party may present alternative, inconsistent or hypothetical allegations in pleadings. The mere presence of alternative, inconsistent or hypothetical allegations asserted does not mean that one allegation must be believed and other inconsistent allegations must not be believed. In this case, M8 asserted a Counterclaim against Simbo. Specifically, M8 claims that if the jury finds that the lease automatically renewed as claimed by Simbo in its Count [1], then you should decide whether M8 was entitled to continue possessing the property during the renewal period, and whether Simbo's actions in leasing the premises to Tesla Motors deprived M8 of the right of possession.

M8's Counterclaim is an alternative pleading which is permitted under Ohio Law. Simbo claims that Paragraph 5 of M8's Counterclaim is an admission that M8 believed that the lease agreement required written notice to vacate. M8 claims that Paragraph 5 of its Counterclaim is simply an alternative pleading as permitted by Ohio Law, and that paragraph 5 of its Counterclaim is not an admission.

You may find that Paragraph 5 is an admission, is not an admission, or is ambiguous. In deciding whether or not paragraph 5 of M8's Counterclaim was an admission, you should view all the facts and circumstances of the case as a whole, including the purpose for which M8 made the statements alleged in Paragraph 5 of its Counterclaim and whether or not M8 simultaneously denied that the lease agreement required written notice to vacate.

{¶ 20} "The general rule is that an erroneous instruction does not necessarily mislead a jury." *Cromer* at ¶ 36. If the jury instruction incorrectly stated the law, a de novo review is applied to determine whether the incorrect jury instruction "'probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" (Citations omitted.) *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995); *Cromer* at ¶ 22. "If the complete set of instructions by the trial court otherwise fairly and correctly lays out the relevant law, and if it is apparent in the context of the complete instructions that an

isolated error did not prejudice a party's substantial rights, reversal on the error is not warranted." *Cromer* at ¶ 35.

{¶ 21} Count 1 of Simbo's lawsuit was predicated on whether the lease agreement contained an automatic renewal term. M8 filed a counterclaim against Simbo that included this paragraph 5: "Pursuant to the terms of the lease agreement, the lease agreement would automatically renew unless M8 provided Plaintiff with written notice to terminate the lease agreement." M8 amended its counterclaim, prior to trial, eliminating paragraph 5. At trial, Simbo argued that Paragraph 5 of the original counterclaim was an admission by M8 that the lease would automatically renew absent notice by M8 to terminate. Simbo questioned M8's representative on the issue. M8, on the other hand, claimed Paragraph 5 was part of an alternative pleading and not an admission.

{¶ 22} Simbo argued the sentence reading "M8's Counterclaim is an alternative pleading which is permitted under Ohio Law" was incorrect since only a portion of M8's counterclaim was pled in the alternative. Simbo asserted any instruction that the counterclaim was an alternative pleading was incorrect and detrimental to its claim under Count 1. Simbo felt once the jurors were told the counterclaim was pled in the alternative, it endorsed M8's position that all pleadings were conditional and not really admissions.

{¶ 23} The proffered jury instruction was a correct statement of law. Civ.R. 8(E)(2) permits alternative pleading or even the use of inconsistent claims, and states, in pertinent part:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one Count or defense or in separate Counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.

According to Civ.R. 8(E)(2), a party can raise a counterclaim that is inconsistent with its defenses. M8 defended against Count 1 of Simbo's complaint for unpaid rent by arguing that the lease agreement did not automatically renew. Alternatively, in its counterclaim, M8 argued that if the lease automatically renewed, Simbo breached the lease agreement by constructively evicting M8 from the premises. The statement "M8's Counterclaim is an alternative pleading which is permitted under Ohio law" accurately reflected the law.

{¶ 24} Even assuming arguendo that the alternative pleading instruction was erroneous, Simbo fails to demonstrate prejudice caused by the instruction. As was stated by the Ohio Supreme Court in *Centrello v. Basky*, 164 Ohio St. 41, 128 N.E.2d 80 (1955), paragraph eight of the syllabus:

> Even though a paragraph in a general charge taken by itself is improper and misleading, yet where, considered in connection with the whole charge and the entire instructions of the court to the jury, it is apparent that no prejudicial error resulted, the judgment rendered on a verdict will not be reversed for such error.

While Simbo took issue with one sentence of the jury instruction, the instruction stated the jury could find "Paragraph 5 is an admission, is not an admission, or is ambiguous." This language reinforced the position that even though the counterclaim was an alternate pleading, paragraph 5 could be construed as an admission. Simbo attempted to introduce paragraph 5 as an admission, and the

language within the instructions provided the jury the option to reach that conclusion. Additionally, a review of the jury instructions, as a whole, indicates the instructions were clear and fairly applied to the facts in the case. It is not probable the jury instruction misled the jury.

{¶ 25} Prejudice is generally presumed when a court instructs a jury on an issue that should not have been charged. *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 461, 1999-Ohio-309, 709 N.E.2d 162. "A trial court should confine its instructions to the issues raised by the pleadings and the evidence." *Jones v. Owens*, 8th Dist. Cuyahoga No. 79013, 2001 Ohio App. LEXIS 4903, 4 (Nov. 1, 2001). The jury instruction was warranted based on the evidence adduced at trial regarding alternative pleadings and admissions. The inclusion of this jury charge was appropriate and not prejudicial on its face.

{¶ 26} The fact that the jury instruction did not mirror an Ohio Jury Instruction is inconsequential. Ohio Jury Instructions are a product of the Ohio Judicial Conference and are not binding on the courts. *State v. Nucklos*, 171 Ohio App.3d 38, 2007-Ohio-1025, 869 N.E.2d 674, ¶ 57 (2d Dist.).

{¶ 27} We do not find the jury instruction erroneous or prejudicial and therefore overrule Simbo's second assignment of error.

### III. <u>Award of Interest</u>

{¶ 28} In Simbo's third assignment of error, Simbo argues the trial court erred as a matter of law when it refused to grant Simbo an award of interest as

provided in the lease agreement.  Simbo claims it is entitled to late charges and prejudgment interest for the real estate taxes and the cost to repair the flag pole.

{¶ 29} Because Simbo failed to request prejudgment interest and late fees for the flag pole in its motion for additur and prejudgment interest filed on August 31, 2017, this matter is waived on appeal.  *Stores Realty Co. v. Cleveland, Bd. of Bldg. Stds. & Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).  *See also Young v. Genie Indus. United States*, 8th Dist. Cuyahoga No. 89665, 2008-Ohio-929, ¶ 20.  We review the issues relating to the real estate taxes de novo.  *Fiorilli Constr., Inc. v. A. Bonamase Constr., Inc.*, 8th Dist. Cuyahoga No. 94719, 2011-Ohio-107, ¶ 60.

{¶ 30} "'[W]here a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law.'"  *Id.* at ¶ 57, quoting *Waina v. Abdallah*, 8th Dist. Cuyahoga No. 86629, 2006-Ohio-2090, ¶ 39.  Trial courts do not have discretion to award prejudgment interest, but must determine the amount of interest due the aggrieved party.  *Fiorilli.* "'"Prejudgment interest under R.C. 1343.03(A) is based on the premise that a party to a contract should not retain the use of money owed under a contract when that amount is due and payable to the other contracting party."'"  *Id.* at ¶ 59, citing *Wasserman v. The Home Corp.*, 8th Dist. Cuyahoga No. 90915, 2008-Ohio-5477, ¶ 7, citing *RPM, Inc. v. Oatey Co.*, 9th Dist. Medina Nos. 3282-M and 3289-M, 2005-Ohio-1280.

{¶ 31} "The award of prejudgment interest is compensation to the [aggrieved party] for the period of time between accrual of the claim and judgment." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117, 1995-Ohio-131, 652 N.E.2d 687. A trial court has discretion to determine the accrual date, or when money becomes "due and payable," under R.C. 1343.03(A). *Vail v. String*, 8th Dist. Cuyahoga No. 107112, 2019-Ohio-984, ¶ 55. To determine when the real estate taxes were due and payable by M8, the trial court interpreted the terms of the lease agreement. Real estate taxes were governed by Section 5.3 which read:

> Landlord shall pay before delinquency all real estate taxes, general or special assessments, and other governmental impositions imposed upon or against the Premises, of every kind and nature whatsoever. Tenant shall reimburse Landlord for seventy percent (70%) of all taxes so paid within five (5) days of Landlord's payment of the same and Landlord's notice to Tenant.

According to the lease, Simbo had to pay the applicable real estate taxes and then provide notice of that payment to M8. Upon the occurrence of those two events, real estate taxes were due and payable. Prejudgment interest as well as late charges under the lease accrued when M8's payment for real estate taxes was past due.

{¶ 32} In its supplement to its motion for additur and prejudgment interest, Simbo acknowledged, and county real estate records confirmed, the real estate taxes were paid July 30, 2015. No evidence was offered indicating M8 was notified of that payment. Absent notice by Simbo stating the real estate taxes were paid on July 30, 2015, and reimbursement due, M8 was not required to submit payment for

the taxes and no obligation to pay prejudgment interest or late charges on that amount accrued.

{¶ 33} Simbo claims M8's acts of tendering payment and acknowledging its obligation to reimburse the real estate taxes paid by Simbo should result in the imposition of prejudgment interest. An email sent by an M8 employee, Lynn Salagovic, to Mark Sims on July 8, 2014, stated, in relevant part, "Mark, we owe $32,158.34 for the tax bill." Additionally, M8 tendered a check to Simbo in the amount of $8,415 in an attempt to satisfy real estate taxes less M8's security deposit and other adjustments. Simbo refused the check and returned it, uncashed. A February 4, 2015 letter from Simbo's counsel concedes M8 is not obligated to pay the real estate taxes until they are paid and states "When they are paid, we will provide you with documentation of the same." These acts acknowledged M8's obligation to pay the real estate taxes, but the dollar amount was not due and payable and subject to prejudgment interest until Simbo paid the real estate taxes and notified M8 of that payment. Absent notice from Simbo following the July 30, 2015 payment of the real estate taxes, the amount was not due and owing and subject to prejudgment interest.

{¶ 34} The fact that M8 was contractually obligated to pay the real estate taxes and was willing to pay them in advance does not require M8 to pay prejudgment interest on the amount. The trial court did not err when it denied Simbo interest and late payments for the real estate taxes and flag pole. For these reasons, we overrule Simbo's third assignment of error.

## IV.  Prevailing Party

{¶ 35} Simbo's fourth assignment of error argues that the trial court committed an error of law and otherwise abused its discretion in determining that M8 was the "prevailing party" for purposes of recovering attorney fees under the terms of the lease.  Simbo argues that it prevailed on two counts of the complaint and M8's counterclaim and, therefore, it should be considered the "prevailing party" under the lease agreement's fee-shifting provision.

{¶ 36} Although the award of attorney fees is subject to review under an abuse of discretion standard, the determination of a plaintiff as the "prevailing party" is subject to review under a de novo standard.  *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 23 (8th Dist.); *Hustler v. Cincinnati, Inc. v. Elm 411, L.L.C.*, 1st Dist. Hamilton No. C-130754, 2014-Ohio-5648, ¶ 13.

{¶ 37} Ohio courts follow the so-called "American rule," which requires that each party involved in litigation pay his or her own attorney fees.  But there are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting.  *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 5 (1st Dist.).  Section 37 of the Simbo/M8 lease agreement provides for fee shifting so that the prevailing party in litigation could recover all reasonable attorney fees and costs:  "If a lawsuit is filed with respect to this Lease, the prevailing party shall

be entitled to collect all reasonable attorney's fees and costs." Both Simbo and M8 are sophisticated businesses. Each was represented by counsel. However, the term "prevailing party" was not defined within the lease agreement. A determination of whether Simbo or M8 is the "prevailing party" is also complicated by a jury verdict in favor of both parties. Judgment was rendered in favor of Simbo on Counts 2 and 3 and M8's Counterclaim; M8 received judgment on Count 1.

{¶ 38} The case of *EAC Properties, L.L.C. v Brightwell*, 10th Dist. Franklin No. 13AP-773, 2014-Ohio-2078, defined "prevailing party" pursuant to a fee-shifting provision in a lease agreement. In *EAC Properties*, Landlord EAC Properties filed suit for breach of a lease agreement against its tenant, Brightwell, seeking $33,045.60 in unpaid rent and $5,226.92 in unpaid fees for utilities, maintenance, insurance, and other related charges. The court determined EAC Properties waived its right to the rent payments, but tenant Brightwell owed EAC Properties $3,703.97 for unpaid utility expenses. Also, EAC Properties held Brightwell's security deposit in the amount of $3,147.30 which was repayable to Brightwell. Based upon the unpaid utilities owed to EAC Properties and the security deposit owed to Brightwell, EAC Properties was awarded $556.67.

{¶ 39} Despite finding in favor of EAC Properties for unpaid utilities, the trial court found EAC Properties' primary claim for additional rent in the amount of over $30,000 failed and because EAC Properties did not prevail on that issue, it was not entitled to collect attorney fees under the lease agreement. Brightwell was determined to be the "prevailing party" entitled to collect attorney fees under the

lease agreement. EAC Properties appealed, contesting the classification of Brightwell as the "prevailing party" for purposes of the fee-shifting provision.

{¶ 40} The Tenth Appellate District reviewed the lease agreement that stated: "[i]f either party is required to commence any action at law or equity against the other party to enforce any provision of this Lease, the prevailing party shall be entitled to the reasonabl[e] attorneys' fees and costs in connection with such action." *Id.* at ¶ 10. Because the lease agreement allowed for fee shifting, the sole issue on appeal was to define the "prevailing party." The Tenth Appellate District found that Brightwell was the "prevailing party" where it succeeded on the main issue in the action — $30,000 in back rent. *EAC Properties* at ¶ 12. The fact that the landlord received a monetary award for outstanding utility bills, a nominal amount in comparison to the back rent, did not affect the conclusion that the tenant was the "prevailing party."

{¶ 41} Applying the "main issue" standard, this court finds M8 the "prevailing party" where it received a jury verdict on the main issue of the case. Under Count 1, Simbo sought six months' rent payments totaling in excess of $150,000. Count 1 represented the largest dollar amount sought by Simbo. M8's defense was heightened due to the significant monetary exposure under Count 1. In contrast, Simbo was awarded $32,158.34 and $5,000, respectively, on Counts 2 and 3 and prevailed on M8's counterclaim that sought damages in an amount exceeding $25,000. Defense counsel spent the largest percentage of time defending Count 1, and the majority of the trial was allocated to Count 1. Adoption of the "main issue"

standard is bolstered by the participation of two sophisticated parties, Simbo and M8, that were represented by counsel. Simbo and M8 negotiated a contract and agreed to the fee-shifting arrangement with full appreciation of the potential risks associated with that term — especially given the holding in *EAC Properties*, 10th Dist. Franklin No. 13AP-773, 2014-Ohio-2078. If the parties had desired to define "prevailing party," e.g. as the party that prevails on the most counts in the litigation, Simbo and M8 could have drafted that provision into the lease. The parties had experience drafting lease agreements and were familiar with their related terms. Several provisions in the lease were modified during the lease negotiations, but the fee-shifting provision remained. The parties had the ability to exclude the fee-shifting clause or define the term "prevailing party," but chose not to do so. The fee-shifting clause was a form of risk allocation that Simbo and M8 purposefully incorporated in the lease agreement.

{¶ 42} We must follow the intent of the parties and apply the terms of the lease agreement:

> When the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting recovery is the "fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale* [*Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987).] The presence of equal bargaining power and the lack of indicia of compulsion or duress are characteristics of agreements that are entered into freely. *See id.* at 35, 514 N.E.2d 702. In these instances, agreements to pay another's attorney fees are generally "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Id.* at syllabus.

*Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8. "The role of courts in examining contracts is to ascertain the intent of the parties. Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." (Citation omitted.) *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 18. The contract language clearly reflected Simbo and M8 intended to allocate the cost of all reasonable attorney fees to the prevailing party. Because the lease did not define prevailing party, we adopt the main issue standard of *EAC Properties* to aid in that determination. In doing so, we find M8 was the "prevailing party" and was entitled to recover all reasonable attorney fees.

{¶ 43} While the "some relief" standard has been applied to define a "prevailing party," we do not find that standard applicable in this matter. The "some relief" standard is commonly invoked, although not exclusively, in accordance with consumer protection laws. For instance, this court defined a "prevailing party" in a Section 1983 case as follows:

> A plaintiff is a "prevailing party" if he receives "at least some relief on the merits of his claim. * * * A plaintiff 'prevails' when 'actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Farrar v. Hobby* (1992), 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494. "A judgment for damages is any amount, compensatory or nominal, which modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113.

*Thomas*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, at ¶ 24. Statutorily imposed fee-shifting clauses under consumer protection laws were created to ensure attorneys would be adequately compensated:

> Congress created fee-shifting [statutes] for the purpose of helping public interest litigants overcome some of the hurdles that they may face in obtaining adequate representation. Congress' goal was to increase access to the courts for those litigants who otherwise might be unrepresented in civil rights litigation.

Ibrahim, *Bills, Bills, Bills\*: The Effect of a Rejected Settlement on Attorney's Fees Under the Civil Rights Attorney's Fees Award Act of 1976*, 36 Cardozo L.Rev. 1987, 1990 (2015). Attorney fees are awarded to the prevailing party. "But when important policy reasons exist to promote the bringing of certain litigation, Congress and state legislatures can and have enacted statutes which provide for attorney's fees to the prevailing plaintiff to encourage and enable such litigation." Stark & Choplin, *Does Fraud Pay? An Empirical Analysis of Attorney's Fees Provisions in Consumer Fraud Statutes*, 56 Clev.St.L.Rev. 483, 494 (2008). While public policy in consumer protection litigation supports a broader interpretation of "prevailing party," no similar need exists in negotiated commercial fee-shifting clauses between sophisticated parties.

{¶ 44} In *Hustler Cincinnati, Inc.*, 1st Dist. Hamilton No. C-130754, 2014-Ohio-5648, the First District appears to have applied the "some relief" doctrine as well as the "main issue" doctrine espoused in *EAC Properties* to a commercial lease dispute. In *Hustler Cincinnati, Inc.*, landlord Elm 411 sought to evict HCI from a commercial lease agreement. HCI wished to remain as a tenant. HCI filed a

declaratory judgment seeking confirmation that a valid lease agreement existed while Elm 411 filed a forcible entry and detainer suit to evict HCI from the premises. Following a bench trial, the court found in favor of HCI and rejected Elm 411's eviction claim. Based upon a fee-shifting provision within a lease agreement, the *Hustler Cincinnati, Inc.* court found HCI was the prevailing party entitled to attorney fees:

> Therefore, we hold, on the authority of *Keal*, that HCI was the prevailing party in whose favor judgment was entered. *See Keal*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, at ¶ 8. At the end of the litigation, HCI had successfully defended against Elm 411's forcible-entry-and-detainer action and had retained occupancy of the premises — the principle issue in dispute. *See EAC Properties, L.L.C.*, 10th Dist. Franklin No. 13AP-773, 2014-Ohio-2078, at ¶ 12; *see also Hikmet*, 10th Dist. Franklin No. 08AP-1021, 2009-Ohio-6477, at ¶ 75. Therefore, for purposes of the fee-shifting agreement in the lease and purchase agreement, HCI was a prevailing party entitled to reasonable and necessary fees and expenses.

*Hustler Cincinnati, Inc.* at ¶ 20.

{¶ 45} While the *Hustler Cincinnati, Inc.* court references both the "some relief" and "main issue" doctrines, the court relied on the principle issue in dispute or "main issue" doctrine as the appropriate test to define the prevailing party. Similarly, we apply a "main issue" analysis to find M8 the prevailing party.

{¶ 46} The "main issue" standard is herein adopted, but is also limited in its application to the facts herein where two consenting, sophisticated parties, represented by counsel knowingly and willingly negotiated a commercial lease agreement.

{¶ 47} For the foregoing reasons, the trial court did not err when it found M8 to be the "prevailing party." We overrule Simbo's fourth assignment of error.

## V.   Legal Fees and Expenses

{¶ 48} In Simbo's fifth assignment of error, it claims the trial court erred when it awarded M8 all of its legal fees and expenses. A trial court's award of legal fees and expenses should not be reversed absent a showing that the court abused its discretion. *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991).

{¶ 49} The Simbo-M8 lease agreement clearly identified the amount of attorney fees to be granted to the prevailing party: "the prevailing party shall be entitled to collect all reasonable attorneys' fees and costs." Defendant M8 was the prevailing party and, therefore, entitled to all reasonable attorney fees and costs. In enforcing the terms of the lease agreement, the trial court needed to ensure the fee award was "'fair, just and reasonable as determined * * * upon full consideration of all of the circumstances of the case.'" *Hustler Cincinnati, Inc.,* 1st Dist. Hamilton No. C-130754, 2014-Ohio-5648, at ¶ 22, citing *Nottingdale Homeowners' Assn.,* 33 Ohio St.3d 32, 514 N.E.2d 702, at syllabus.

{¶ 50} M8's attorneys provided an affidavit identifying the hourly rates of the attorneys and paralegals as well as the number of hours spent on the case. Both parties presented expert testimony regarding the reasonableness of the requested attorney fees and expenses.

{¶ 51} Simbo argued M8 should recover only those attorney fees attributable to Count 1, the count on which M8 prevailed at the lower court. Yet, claims that involve common facts or legal theories may be difficult to divide as to the time and hours spent on litigating the individual claims. *Hustler Cincinnati Inc.*, *supra*, at ¶ 24. "[W]here multiple claims are rooted in the same allegations, facts, discovery, and legal arguments, a trial court does not abuse its discretion in awarding attorney fees for the time spent on the claims." *Edlong Corp. v. Nadathur*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, ¶ 16, citing *Parker v. I&F Insulation Co.*, 1st Dist. Hamilton No. C-960602, 1998 Ohio App. LEXIS 1187, 20 (Mar. 27, 1998). M8 provided an accounting of the attorney fees and expenses for which it sought reimbursement. The billing was not organized by the various counts within the complaint and counterclaim, but reflected intermingled activity across all issues raised within the litigation. The billing supported the position that the involvement of common facts and legal theories made it difficult to divide the time and hours spent according to the individual counts and issues. In fact, similar to *Hustler Cincinnati Inc.*, the testimony and exhibits at the hearing for attorney fees does not reflect any rebuttable testimony that fees could be designated by one claim.

{¶ 52} Simbo challenged, under the theory of judicial estoppel, that M8's recovery was limited to only reasonable attorney fees and costs related to Count 1. On July 17, 2017, before trial, M8 filed a brief in opposition to Simbo Properties, Inc.'s motion in limine requesting the court to define prevailing party, and argued the prevailing party could recover fees and expenses only on successful claims. Yet,

after trial, the trial judge granted M8, the prevailing party, attorney fees and expenses on all claims. "The doctrine of judicial estoppel 'forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."'" *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25, quoting *Griffith v. Wal-Mart Stores*, 135 F.3d 376, 380 (6th Cir.1998), quoting *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214 (6th Cir.1990). "The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Greer-Burger*. The trial court did not rule on M8's brief, and therefore, judicial estoppel did not apply to this issue.

{¶ 53} The record includes sufficient evidence to support the trial court's attorney fees and expenses award. The trial court did not abuse its discretion when it awarded attorney fees and expenses to M8's counsel, and as a result, Simbo's fifth assignment of error is overruled.

## VI. Payment of Legal Fees

{¶ 54} Simbo argues in its sixth assignment of error that the trial court erred as a matter of law when it awarded legal fees that were not actually paid by M8. Simbo asserts M8's attorneys were paid a monthly fixed fee by M8 and the expenses related to the Simbo-M8 litigation were satisfied under the fixed-fee payments.

{¶ 55} An award of legal fees and expenses is reviewed for an abuse of discretion. *Cruz v. English Nanny & Governess Sch., Inc.*, 2017-Ohio-4176, 92 N.E.3d 143, ¶ 104 (8th Dist.).

{¶ 56} Simbo contends M8 is not entitled to attorney fees because it did not establish the requested attorney fees were paid by M8. In support of its position, Simbo references awards of attorney fees under R.C. 149.43 and 149.43(C)(2)(b) that provide that payment of attorney fees are applicable only where the prevailing party actually paid or was obligated to pay the requested attorney fees. *State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 99733, 2013-Ohio-4481, ¶ 5; *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 24. The above statutes address discovery rule sanctions and remedial fees where public records were not provided. These statutes and related case law are not applicable where parties executed a lease agreement including a fee-shifting provision whereby the prevailing party was entitled to collect all reasonable attorney fees and costs.

{¶ 57} The limitation on collection of attorney fees in the lease agreement is that the fees must be reasonable; not whether the fees were actually paid by M8 rather than the fees being incurred by the prevailing party, M8, as shown under internal payment and accounting procedures of M8 and the Bernie Moreno Companies and presented as part of the record.

{¶ 58} As evidence in support of its claim for attorney fees and costs, M8 submitted to the trial court the attorney fees and expenses incurred in the Simbo-M8 litigation and introduced expert testimony regarding the reasonableness of those amounts. The Chief Financial Officer of Bernie Moreno Companies, Robert Kistler ("Kistler"), also testified regarding M8's accounting procedures. In his

capacity as CFO, Kistler completes the accounting work for M8 and Bernie Moreno Companies. While Bernie Moreno Companies is not a party to this lawsuit, M8 is one of several businesses owned by Bernie Moreno Companies, and Bernie Moreno Companies, rather than M8, paid the legal fees related to the Simbo-M8 litigation.

{¶ 59} According to Kistler, Bernie Moreno Companies paid its attorneys a monthly retainer for its legal services. (Tr. 939.) The litigation expenses incurred for the instant lawsuit, however, were not included in the fixed-fee arrangement but were paid in addition to the fixed-fee amount. (Tr. 948-950.) Legal expenses were paid from Bernie Moreno Companies' operating account and were to be subsequently applied to M8 on the company's accounting records. (Tr. 938, 949.)

{¶ 60} Kistler stated the Simbo-M8 litigation fees bills, in addition to the monthly fixed-fee arrangement, were paid in full as of February 21, 2018, except for the most recent billing. (Tr. 935.) Yet, as of the date of the hearing, the accounting records for Bernie Moreno Companies and M8 did not reflect any legal fees charged back from the general operating account to M8. (Tr. 956.) Simbo argues the absence of accounting records substantiating payment of the Simbo-M8 litigation fees precludes M8 from recovering attorney fees and costs under the fee-shifting clause.

{¶ 61} Simbo's arguments are unsupported. M8 introduced expert evidence verifying the reasonableness of its attorney fees and costs. Kistler testified the Simbo-M8 litigation costs were not included within Bernie Moreno Companies' monthly fixed-fee arrangement and had been paid up to and including the

February 21, 2018 invoice. No evidence was required to show M8's internal accounting records reflected the payments for the Simbo-M8 litigation had been applied to M8 rather than Bernie Moreno Companies. Ample evidence was presented for the trial court to award attorney fees and costs to M8.

{¶ 62} The trial court's decision to award M8 attorney fees and costs was not an abuse of discretion. This court overrules Simbo's sixth assignment of error.

{¶ 63} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MICHELLE J. SHEEHAN, J., CONCUR